# Exhibit N

**Kate Gebo**
**Executive Vice President**
**Human Resources & Labor Relations**
United Airlines - WHQHR
233 S. Wacker, Suite 1100
Chicago, Illinois  60606



July 29, 2021

<u>**VIA ELECTRONIC MAIL**</u>: jfranklin5@kentlaw.iit.edu

Jamie S. Franklin
C-K Law Group
Law Offices of Chicago-Kent
565 W. Adams Street, Suite 600
Chicago, IL 60661

      Re:    Claim of Susie Hoffman for Additional Monetary Incentives

Dear Ms. Franklin:

I am in receipt of your letter dated June 16, 2021, sent on behalf of your client, Susie Hoffman. In your letter, you state that Ms. Hoffman is entitled to additional monetary incentives due to (1) her retirement as of July 30, 2020 under the Voluntary Separation Program 2 ("VSP2"), (2) her application for additional benefits under the subsequent Voluntary Separation Leave Program ("VSL"), and (3) the 36-month commitment made by United Airlines, Inc. ("United") under its 2017 Early Out Retiree Policy ("2017 EOR Policy").

This letter responds, in order, to each of the points raised in your letter.

**<u>ERISA Does Not Apply to the Relevant Portion of the VSL</u>**

In your letter, you contend that the entire VSL is, in effect, a severance plan with an "ongoing administrative scheme" and, therefore, it must be a benefit plan subject to ERISA.  This is not correct.  As Mr. Lounsbury has explained previously, the VSL has two components: (1) a paid leave of absence period and (2) if, at the end of the paid leave of absence period, the employee separates from service (and retires if eligible under United's policies), the employee can receive certain travel privileges and other limited benefits. However, there is no monetary payment associated with the employee's separation from service.  In addition, the leave of absence policy, which is part of the VSL, expressly states that it is not an ERISA plan, while the severance plan, which is also part of the VSL, expressly states that it is.  As a result, the VSL as a whole is <u>not</u> a severance plan – only the portion associated with post-employment benefits and travel privileges is.   Your reliance on the Supreme Court's ruling in *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1 (1987) (a case in which the court ruled that an employer's severance plan was <u>not</u> subject to ERISA) is therefore misplaced and inapposite to the facts of Ms. Hoffman's claim.

In addition, the express terms of ERISA and the relevant agency regulations issued by the Department of Labor ("DOL") clearly exempt paid leave benefits and other "payroll practices" that provide regular compensation to employees via policies where the benefits are paid from the company's general assets. *See* ERISA Section 3(1) and 26 C.F.R. § 2510.3-1(b); *see, also*, DOL Advisory Opinion No. 2004-08A (Jul. 2, 2004) (vacation and other leave benefit programs are exempted from coverage under ERISA unless the company pays the benefits from a separate bona fide trust fund and satisfies other detailed requirements). As it relates to Ms. Hoffman's claim, the paid leave portion of the VSL is clearly exempted from coverage under ERISA because (1) the paid leave and other benefits during leave are paid out of United's general assets, (2) there is no ongoing administrative program needed to satisfy United's obligations under the VSL, and (3) the plain language of the VSL demonstrates that paid leave period was not intended to be any type of benefit plan subject to ERISA.

**The 2017 Early Out Policy Does Not Apply to Ms. Hoffman**

As Mr. Lounsbury has summarized previously, prior to 2017, United offered several Early Out Programs. These programs offered employees lump sum cash payments (in addition to certain travel privileges and other benefits) in exchange for retiring early. In 2017, it was clear to United's management that a significant number of employees were postponing retirement in the hopes that another Early Out Program with a lump sum cash payment would be offered. To assure employees that they could retire without missing out on a future lump sum cash payment associated with any Early Out Program, United announced the 2017 EOR Policy, which stated that an eligible employee could retire under normal circumstances and be assured that the financial incentive under any Early Out Program within 36 months would be available to them – thus they would receive the lump sum severance payment.

As discussed above, Ms. Hoffman retired under VSP2 and then made a claim for additional cash benefits based upon the incentives offered under the subsequent VSL. Because neither of those programs is an Early Out Program (see below), and despite the contentions in your letter, the 2017 EOR Policy does not apply to her. This is why the FAQs for the VSL stated prominently that the 2017 EOR Policy does not apply to the VSL.

However, for sake of argument, even if the VSL were an Early Out Program, then it would follow that the VSP2 was also an Early Out Program. The express terms of the 2017 EOR Policy specifically exclude from the 36-month commitment any employee who retired under a prior Early Out Program. That is, the 2017 EOR Policy does not protect an employee who takes one Early Out Program from losing out on a subsequent Early Out Program. It merely protects ordinary retirements by employees within the applicable 36-month period outside the context of an Early Out Program.

**Neither the VSP2 Nor the VSL are "Early Out Programs"**

Contrary to the assertions in your letter, neither the VSP2 nor the VSL are Early Out Programs within the meaning of the 2017 EOR Policy. The meaning of the term "Early Out Program" must be interpreted in the context in which the 2017 EOR Policy was announced and in the context of what United's prior Early Out Programs actually provided. As stated above, prior to

3

2017, United offered several "Early Out Programs." These programs offered employees lump sum cash payments upon separation (in addition to certain travel privileges and other benefits) in exchange for retiring early.

In contrast to United's Early Out Programs, the VSL and VSP2 cash component is ordinary wages on the ordinary payroll cycle under a partially-paid leave of absence during a period in which the individual remains an employee of United. During the leave of absence, the employee is subject to United's terms and conditions of employment (for example, the employee could be terminated for cause during the leave of absence for violations of company policy and thus forfeit any remaining leave pay and subsequent separation benefits; and the employee could not take pension or 401(k) distributions other than allowable in-service distributions). Under the VSL and VSP2, there is no cash lump sum upon separation from employment as was the case with United's Early Out Programs, nor is there even pay continuation over a period of time upon separation from employment. As a result, the VSL and VSP2 are not considered Early Out Programs within the meaning of the 2017 EOR Policy.

Furthermore, the VSP2 communications (<u>the terms of which Ms. Hoffman acknowledged and accepted</u>) included an unequivocal statement that it was not an Early Out Program within the meaning of the 2017 Early Out Retiree Policy. As a result, when Ms. Hoffman accepted the terms of VSP2 and retired under its provisions, she was on notice and accepted that United's current round of voluntary separation programs were not considered Early Out Programs.

In response to the last item raised in your letter, Mr. Lounsbury has previously provided you with a true and accurate copy of the 2017 EOR Policy, as taken from United's employee intranet site.

If Ms. Hoffman has additional facts or arguments that she would like United to consider relating to her claim, we would be happy to consider and respond to them. Please direct any inquiries regarding this matter to the attention of Mr. Lounsbury.


Sincerely,

*Kate Gebo*

Kate Gebo
Executive Vice President
Human Resources and Labor Relations


cc:     Lincoln Lounsbury