IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHEAL (SUSIE) HOFFMAN, MARGARETT ROUMAIN, and GREGORY FRANK, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED AIRLINES, INC., UNITED AIRLINES FRONTLINE VOLUNTARY SEPARATION PROGRAM 2 (VSP2), UNITED AIRLINES FRONTLINE VOLUNTARY SEPARATION LEAVE (VSL) PROGRAM, UNITED AIRLINES CONSOLIDATED WELFARE BENEFIT PLAN, and UNITED AIRLINES RETIREE MEDICAL PROGRAM, <br><br> Defendants. | Case No. 21-cv-06395 <br><br> Judge Dow <br> Magistrate Judge Gilbert <br><br> JURY TRIAL DEMANDED |

## AMENDED CLASS ACTION COMPLAINT

1. The plaintiffs, Micheal (Susie) Hoffman, Margarett Roumain, and Gregory Frank, on behalf of themselves and all others similarly situated, bring the following Amended Class Action Complaint against defendant United Airlines, Inc. and the plan defendants enumerated below for violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. They are seeking payment of benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and relief pursuant to ERISA § 404(a), 29 U.S.C. § 1104(a).

### The Parties

2. Micheal (Susie) Hoffman is a former United Airlines Flight Attendant. She is currently age 64 and is a resident of Castle Rock, CO. She is a plaintiff in this matter.

3. Margarett Roumain is a former United Airlines Flight Attendant and Inflight Supervisor. She is currently age 64 and is a resident of Union, NJ. She is a plaintiff in this matter.

4. Gregory Frank is a former United Airlines Customer Service Representative. He is currently age 68 and is a resident of Humboldt, TX. He is a plaintiff in this matter.

5. Defendant United Airlines, Inc. ("United") is an international airline incorporated in Delaware with its corporate headquarters in Chicago, IL.

6. Defendant United Airlines Frontline Voluntary Separation Program 2 ("VSP2") is an employee welfare benefit plan that offers severance benefits to employees who voluntarily retire.

7. Defendant United Airlines Frontline Voluntary Separation Leave ("VSL") Program is an employee welfare benefit plan that offers severance benefits to employees who voluntarily retire.

8. Defendant United Airlines Consolidated Welfare Benefit Plan ("Welfare Benefit Plan") is an employee welfare benefit plan that offers health, disability, and retirement benefits to employees.

9. Defendant United Airlines Retiree Medical Program ("Retiree Medical Program") is an employee welfare benefit plan that offers retirement benefits to employees.

10. The defendant benefits plans are employee benefit plans as defined in 29 U.S.C. §1002(3) that are both sponsored and administered by United.

**Jurisdiction and Venue**

11. This Court has jurisdiction pursuant to 29 U.S.C. §§ 1132(e)(1) and 1132(f) and 28 U.S.C. § 1331.

12. Venue is proper in the Northern District of Illinois under 29 U.S.C. §1132(e)(2), because the benefits plans involved in this matter are administered in this judicial district and United is headquartered in this district. Venue is also proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this complaint occurred in this judicial district and United is headquartered in this district.

13. ERISA provides a mechanism for administrative or internal appeal of benefit denials. 29 U.S.C. § 1133. Those avenues of appeal were exhausted by Ms. Hoffman.

## Nature of the Action

14. Plaintiffs bring a claim against all defendants seeking payment of benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and against defendant United for breach of fiduciary duty under ERISA § 404(a), 29 U.S.C. § 1104(a).

15. Plaintiffs seek payment of benefits and all other relief and damages due them on behalf of themselves and a class of individuals who are similarly situated.

## Factual Background

**A.     The Plaintiffs**

16. Ms. Hoffman worked as an international flight attendant at United. She began as a flight attendant at Continental Airlines in July 1998. When United acquired Continental, she became a United employee. Ms. Hoffman retired under an early out program in July 2020. She is an "employee" under 29 U.S.C. § 1002(6).

17. Ms. Roumain worked as an international flight attendant and inflight supervisor (purser) at United. She began as a flight attendant at Continental Airlines in December 1996. When United acquired Continental, she became a United employee. Ms. Roumain retired under an early out program in July 2020. She is an "employee" under 29 U.S.C. § 1002(6).

18. Gregory Frank worked as a customer service representative at United. He began as a customer service representative for Texas International Airlines in 1977. He continued when that airline was acquired by Continental Airlines. When United acquired Continental, he became a United employee. Mr. Frank retired under an early out program in July 2020. He is an "employee" under 29 U.S.C. § 1002(6).

**B.     United's Plans and Policies**

19. United is an "employer" under 29 U.S.C. § 1002(5).

**1.     The "Early Out Policy"**

20. From time to time, United offered what it called "early out programs" to incentivize employees to retire. Those programs typically provided additional monetary, health care, and travel benefits to employees who chose to retire early under the programs.

21. In 2017, United instituted a 2017 Early Out Retiree Policy ("Early Out Policy") providing that if an early out program was rolled out within 36 months of an employee's retirement – and that employee met all the participation criteria – the employee would be eligible for any additional benefits offered by the subsequent early out program.

22. On August 17, 2017, Oscar Munoz, then the CEO of United, sent a letter to United employees detailing the policy. It was entitled "A Message from Oscar: We add clause to retirement policy."

23. The letter stated, "Many of you have told me that you are holding off on retirement, waiting to see if the company offers another early out. I want to be upfront and transparent with you about our future plans, so you can make the best plans for yourself and your family. So, to give you greater confidence when you do make the decision to retire, I've asked to add a new clause to our retirement policy. **If something dramatic happens in the industry and**

4

**we decide to offer an early out within 36 months after you retire, you would be eligible for the financial benefits of the program even after retiring."** (Bold added.)

24. United did not provide a definition of an "early out" in the Early Out Policy.

25. According to Oscar Munoz' letter, the Early Out Policy was an amendment to United's Welfare Benefit Plan.

26. On August 30, 2020, United updated the Early Out Policy to discontinue it as of January 1, 2021. In that announcement, United provided a "FAQ" to the Early Out Policy. On information and belief, this FAQ had not been provided to employees before August 30, 2020.

27. The FAQ provided:

**What is the early out policy that we are sunsetting?**

The August 2017 early out policy states that if we introduce an early out program for any of our work groups, any member of an eligible work group who has previously retired in good standing within the previous 36 months will receive the cash benefit of that early out. This policy would not affect retiree benefits or retiree travel. The eligibility window is 36 months from the "closing date" of any early out program (the last day that anyone can sign up to participate in the early out).

**Who is eligible for the August 2017 early out policy?**

**Any retiree who was in good standing at the time of retirement and who retired before January 1, 2021, and within the 36 months before the closing date of the early out program is eligible.**

(Bold added.)

28. Each of the plaintiffs was in good standing at the time of his or her retirement and retired before January 1, 2021.

29. Because the plaintiffs retired before January 1, 2021, the discontinuation of the Early Out Policy does not affect their situation.

30. On information and belief, a large number of United employees retired during the time the Early Out Policy was in place – between August 17, 2017 and January 1, 2021. Some retired under the regular retirement procedure and some retired under an early out program.

### 2. The VSP2

31. In the summer of 2020, in response to the pandemic, United sought to reduce the ranks of its employees.

32. In order to do so, United offered an early out program called the Voluntary Separation Program 2 ("VSP2").

33. The VSP2 is an "employee welfare benefit plan" under 29 U.S.C. § 1002(1). It is covered by ERISA under 29 U.S.C. § 1003(a).

34. It offers severance benefits to employees who retire under it.

35. There were two versions of the VSP2 – Option A and Option B.

36. VSP2/A provided enhanced medical benefits, extra travel privileges, job support services, and an additional year of Benefit Service added to the pension plan that some employees participated in from their time with Continental Airlines (called the CARP).

37. VSP2/B provided a three-month "leave" period during which the employee would receive 25% of his or her regular pay and enhanced medical benefits.

38. Ms. Hoffman and Ms. Roumain retired under the VSP2 in July 2022. Mr. Frank retired under the VSP2 in June 2022.

39. They each retired in reliance on the Early Out Policy.

40. On information and belief, United did not provide the FAQ to the Early Out Policy to employees until after the plaintiffs' retirement.

41. On information and belief, a large number of other United employees retired under the VSP2.

### 3. The VSL

42. On January 22, 2021, as the pandemic wore on, United announced that it would offer a new early out program called the Frontline Voluntary Separation Leave ("VSL") Program to encourage even more employees to retire.

43. The VSL is an "employee welfare benefit plan" under 29 U.S.C. § 1002(1). It is covered by ERISA under 29 U.S.C. § 1003(a).

44. It offers severance benefits to those who retire under it.

45. The VSL also had two versions – Option A and Option B.

46. VSL/A offered an 8-month "leave" period during which the employee would receive 33% of his or her regular pay, continued health care coverage, a $125,000 contribution to a retiree health account, and enhanced travel privileges.

47. VSL/B offered an 18-month "leave" period during which the employee would receive 100% of his or her regular pay, continued health care coverage, and enhanced travel benefits.

48. The VSL provided significantly richer benefits than the VSP2 had provided.

### C. Ms. Hoffman's Exhaustion of Administrative Remedies

49. Applications for participating in the VSL were due via United's internal communication service, HelpHub, by February 16, 2021.

50. On February 15, 2021, Ms. Hoffman applied via HelpHub for the additional benefits offered by the VSL pursuant to the Early Out Policy. Her application was denied.

51. Ms. Hoffman called United's Human Resources service on February 15, 2021 to ask why she could not receive the benefits of the VSL under the Early Out Policy. United gave her the following information: "this program [the VSL] is not an early out, **which is a financial incentive program that provides cash upon separation**. This Program provides paid leave or medical and pass travel enhancements. These types of benefits are excluded from the 2017 policy, which was updated in 2020. For details, please refer to Sunsetting our early out policy." (Bold added.)

52. As detailed in Section B3 above, the VSL provided cash upon separation.

53. Ms. Hoffman received a follow-up email from United's HelpHub on February 15, 2021 stating that it was providing a "screenshot found within our VSL program FAQ in HelpHub that states why the VSL program is [n]ot considered an early out program." The paragraph indicated as being the screenshot stated: "[t]his program is not an early out, which is a financial incentive program that provides cash upon separation. This Program provides paid leave or medical and pass travel enhancements. These types of benefits are excluded from the 2017 policy, which was updated in 2020. For details, please refer to Sunsetting our early out policy."

54. On April 2, 2021, Ms. Hoffman submitted a written appeal to United. She also requested copies of all pertinent policies.

55. United responded in writing on April 20, 2021 and April 22, 2021, continuing to assert the position that Ms. Hoffman was not eligible for the enhanced VSL benefits. It also asserted that the plans in question were not covered by ERISA.

56. On June 16, 2021, Ms. Hoffman submitted a second written appeal to United.

57. On July 29, 2021, United denied Ms. Hoffman's appeal, continuing to assert that she was not eligible for the enhanced VSL benefits.

58. Ms. Hoffman has exhausted all administrative requirements and this matter is ripe for judicial review.

### D. The Plaintiffs' Entitlement to the Enhanced VSL Benefits

59. The VSL provided benefits that exceeded those the plaintiffs received in the VSP2, and it was offered within 36 months of each plaintiff's retirement. As such, under the Early Out Policy and the Message from Oscar, the plaintiffs are entitled to the financial benefits of the VSP2.

60. The VSP2 and the VSL offer the same kinds of benefits as prior early out programs: extra pay, enhanced medical benefits, and enhanced travel benefits. There is no functional difference between these programs and prior early out programs offered by United.

61. United contends that neither the VSL nor the VSP2 are "early out programs" because they involve paid "leaves of absence."

62. United's renaming of the VSP2 and the VSL as paid "leaves of absence" is an attempt to avoid paying large numbers of employees the benefits it promised in the Early Out Policy.

63. United's characterization of these plans as paid "leaves of absence" is form without substance. A leave of absence allows an employee to return to work when it ends. Here, the VSP2 and the VSL offer cash benefits to an employee who agrees to terminate his/her employment.

64. The VSP2 and VSL are severance plans with an ongoing payment of wages and benefits and clear terms of eligibility, and they require United to implement an ongoing administrative plan to manage them.

65. United also contends that even if the VSP2 and VSL are early out programs, the Early Out Policy does not apply to employees who retired under *other* early out programs – only to those who retired under normal circumstances.

66. The Early Out Policy has no such language. It states that it applies to any "employee who has retired in good standing, within the previous 36 months of the closing date of the Early Out election window, meets all applicable Early Out Plan eligibility requirements as of their retirement date and, whose last work assignment immediately prior to retirement was from the workgroup offering the Early Out."

67. The plaintiffs met each of those requirements.

**1.    Susie Hoffman**

68. Ms. Hoffman met each of the requirements of the Early Out Policy.

69. She applied for VSL benefits through United's internal system, HelpHub on February 15, 2021.

70. United denied Ms. Hoffman's application and refused to honor the Early Out Policy.

**2.    Margarett Roumain**

71. Ms. Roumain met each of the requirements of the Early Out Policy.

72. She was on medical leave at the time the VSP2 early out program was offered. She received multiple phone calls from United personnel urging her to take the VSP2. She was told "if you don't take it, that's it – this is the last one."

73. When Ms. Roumain found out about the better benefits under the VSL early out program a few months later, she called United and asked if she could apply for them. She was told no. United refused to honor the Early Out Policy.

10

74. She also asked United to allow her to come back to work. With the effects of the pandemic waning, United needed employees and was hiring new flight attendants at that time. She was told no and that her termination was permanent.

### 3. Gregory Frank

75. Mr. Frank met each of the requirements of the Early Out Policy.

76. Mr. Frank wanted to retire at the end of December 2020, but he was pressured to take the VSP early out plan in June 2020. United representatives stated, "if you don't go now, your pension is going to drop [in value]." He also heard from other employees that United had said this was the "last deal."

77. Recently, Mr. Frank was attempting to use his travel benefits to book a flight at a discount from another airline. He was told he could not do so. When he followed up, United's benefits department told him he was not considered a "fully retired employee" – instead, his status was VSP2, which did not entitle him to the discounts that other retired United employees can access.

### 4. Other Employees

78. United pressured other employees to take the VSP2 and indicated to them that there would be no better early out programs in the future.

79. In an email sent to United employees on May 29, 2020, United stated, "This option [the VSP2] will be **our most valuable offer** if you're considering leaving United." (Bold added.) It threatened that the employees could be furloughed if they did not take the VSP2 early out program.

80. In a letter sent to United employees in or around May 2020, United stated, "For those who may be considering the [retirement], the new Voluntary Separation Program (VSP2),

11

which was built based on your direct feedback on the first program offering, is the **richest voluntary package we foresee being able to offer**." (Bold added.) The letter continued, "Remember, you must apply in Help Hub before the deadline, to retire as part of **VSP2, where you will receive the most valuable separation benefits that we will be able to offer you**." (Bold added.)

81. The letter concluded, "We know that this is a difficult decision to make, but hope you understand the severity of the situation we find ourselves in. For those who make the sacrifice to take this Voluntary Separation Program (VSP2), we thank you. While we'll be sad to see you go, your decision helps your fellow United family members, and United will forever be grateful."

82. When United rolled out the even-better VSL early out program just a few months later, it failed to notify retirees that it was offering a new early out program, preventing them from applying for the benefits of the VSL.

83. Contrary to the emails and letters it sent to employees just a few months earlier, the VSL provided more-valuable benefits than the VSP2.

84. For those United retirees who did learn about the VSP2 and applied for its benefits, United denied their applications.

85. United breached the promise it had made to its employees in the Early Out Policy by failing to provide those who had already retired within 36 months of the VSL with the benefits of the VSL.

E.  **United's Status as a Fiduciary**

86. United is a fiduciary pursuant to 29 U.S.C.§ 1002(21) and the sponsor of the plans involved in this matter pursuant to 29 U.S.C. § 1002(16).

12

87. Under ERISA Section 404(a), 29 U.S.C. § 1104(a), United, as a fiduciary, must "discharge its duties with respect to a plan solely in the interest of the plan participants and beneficiaries, and for the exclusive purpose of providing benefits to participants and beneficiaries."

**F.  Class Allegations**

88. The named plaintiffs bring this action on their own behalf and on behalf of the class of employees who are similarly situated, which includes:

> all employees who retired within 36 months of January 21, 2021 and were not paid all of the benefits offered by the VSL.

89. Plaintiffs are members of the class.

90. On information and belief, the class is so numerous that joinder of all of them is impracticable.

91. There are questions of law and fact common to the class and these questions predominate over any questions affecting only individual class members. Those common questions include whether the United denied retired employees the benefits promised under its Early Out Policy and whether United breached its fiduciary duties.

92. Plaintiffs' claims are typical of the class, in that they are eligible for the benefits promised in the Early Out Policy and United refused to pay them those benefits.

93. Plaintiffs will fairly and adequately represent and protect the interests of the members of the class. Plaintiffs haves no conflict with any other class member. Plaintiffs are committed to the goal of having United comply with its Early Out Policy and to pay retired employees what they are due.

94. Plaintiffs have retained and are represented by counsel who is experienced and qualified in litigating ERISA class actions.

95. Class certification is further appropriate pursuant to Fed.R.Civ.P. 23(b)(3) because the questions of law or fact common to class members predominate over any questions affecting only individual class members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

96. Class certification is appropriate pursuant to Fed.R.Civ.P. 23(b)(2) because United has acted or refused to act on grounds generally applicable to the class, making appropriate declaratory and injunctive relief with respect to plaintiffs and the class.

## COUNT I
## Claim for Benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)
## Against All Defendants

97. Plaintiffs incorporate all of the preceding paragraphs.

98. ERISA § 502(a)(1)(B) provides that plan participants or beneficiaries may bring a civil action to recover benefits due to them under the terms of the plan, to enforce their rights under the plan, or to clarify their future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B).

99. The VSP2, the VSL, the Welfare Benefit Plan, and the Retiree Medical Program are ERISA plans. The Early Out Program is an amendment to United's Welfare Benefit Plan.

100. The VSP2 and the VSL are early out programs.

101. The plaintiffs and the class members retired within 36 months of United's offering of the VSL and were not offered the benefits of the VSL.

102. The plaintiffs and the class members are entitled to all benefits provided by the VSL that are in addition to the benefits they received upon retirement.

## COUNT II
### Claim for Breach of Fiduciary Duty under
### ERISA § 404(a), 29 U.S.C. § 1104(a)
### Against United Airlines, Inc.

103. Plaintiffs incorporate all preceding paragraphs.

104. United breached its fiduciary duties to the plaintiffs and the members of the class by, among other things, refusing to honor the promises it made in the Early Out Policy, misrepresenting to employees who took the VSP2 early out program that no better early out programs would be forthcoming, mischaracterizing the VSL to employees by stating that it was not an early out program, failing to inform them that it had been offered, thus preventing them from applying for benefits, and refusing to pay eligible retirees the benefits of the VSL.

105. The plaintiffs and the members of the class were harmed by this breach of United's fiduciary duties.

## Relief Sought

WHEREFORE, the plaintiffs pray for the following relief on behalf of themselves and the class they represent:

A. Certification of a class under F.R.C.P. 23(b)(3) and/or 23(b)(2) and/or a hybrid of Rules 23(b)(3) and 23(b)(2) of all employees who retired within 36 months of January 21, 2021 and were not paid all of the benefits offered by the VSL;

B. Appointment of Michael (Susie) Hoffman, Margarett Roumain, and Gregory Frank as class representatives;

C. Appointment of undersigned counsel as Class Counsel to represent them and the class;

D. Appointment of undersigned counsel as Lead Class Counsel for the purposes of all related cases;

15

  E. Payment of all benefits due to the plaintiffs and the members of the class under the applicable plan(s);

  F. Implementation of all relief available for the breach of fiduciary duty, including equitable and/or injunctive relief sufficient to put plaintiffs and the members of the class in the position they would have been absent the breach;

  G. Payment of pre- and post-judgment interest;

  H. Payment of attorneys' fees and costs of litigation; and

  I. Any and all other relief to which they may be entitled in law or equity and/or that may be ordered by the Court.

## Jury Demand

The plaintiffs demand a trial by jury on all issues so triable raised in the foregoing Amended Complaint.

Dated: March 7, 2022        Respectfully submitted,

                /s/ Jamie S. Franklin
                Jamie S. Franklin
                Attorney for Plaintiff

Jamie S. Franklin, ARDC No. 6242916
The Civil Litigation Clinic at
Chicago-Kent College of Law
565 West Adams Street, Suite 600
Chicago, IL 60661
312-906-5048 (direct)
312-906-5299 (fax)
jfranklin5@kentlaw.iit.edu

## **CERTIFICATE OF SERVICE**

      I, the undersigned, certify that I had the foregoing document, Amended Class Action Complaint, served on the parties listed below via the ECF System on March 7, 2022.

                                                  /s/ Jamie S. Franklin

Service List

Brian D. Boyle
Shannon M. Barrett
M. Tristan Morales (pro hac vice)
1625 Eye Street, N.W.
Washington, DC 20001
bboyle@omm.com
sbarrett@omm.com
tmorales@omm.com

Larry S. Kaplan
lkaplan@kmazuckert.com
Marnie A. Holz
mholz@kmazuckert.com
KMA ZUCKERT LLC
200 W. Madison Street, 16th Fl.
Chicago, IL 60606