## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MICHEAL (SUSIE) HOFFMAN,
MARGARETT ROUMAIN, GREGORY
FRANK, VICTOR YUSTMAN, VICTORIA
FELLOWS, MARIA DEGLAUVE, RON
OZAKI, BERNHARD J. ORNELLAS,
ERNEST HEWSON, DONNA LOUCKS,
ROXANN MERLINI, and JO GAWLER,

          Plaintiffs,

      v.

UNITED AIRLINES, INC., UNITED
AIRLINES 36-MONTH SUPPLEMENTAL
BENEFIT PLAN, UNITED AIRLINES
FRONTLINE VOLUNTARY SEPARATION
PROGRAM 2 (VSP2), UNITED AIRLINES
FRONTLINE VOLUNTARY SEPARATION
LEAVE (VSL) PROGRAM, UNITED
AIRLINES CONSOLIDATED WELFARE
BENEFIT PLAN, and UNITED AIRLINES
RETIREE MEDICAL PROGRAM,

          Defendants.

Civil Action No. 21-cv-06395

Honorable Robert M. Dow Jr.

**JURY TRIAL DEMANDED**

## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

1.    The Plaintiffs, Micheal (Susie) Hoffman, Margarett Roumain, Gregory Frank, Victor Yustman, Victoria Fellows, Maria Deglauve, Ron Ozaki, Bernhard J. Ornellas, Ernest Hewson, Donna Loucks, Roxann Merlini, and Jo Gawler, individually and on behalf of all others similarly situated, bring the following Amended Consolidated Class Action Complaint against defendant United Airlines, Inc. and the plan defendants enumerated below for violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.

2.    In 2017, United Airlines ("United") recognized that employees were reluctant to retire because they did not want to miss out on enhanced retirement benefits the airline

periodically offered through voluntary separation programs. In an effort to reduce its workforce during periods in which such programs were not offered, United promised its employees that if they retired and within three years thereafter it offered any early retirement program providing better benefits than the employee received at their retirement, those employees would receive benefits under that superior program. Ms. Hoffman, Ms. Roumain, Mr. Frank, Ms. Loucks, and Ms. Gawler retired under an early retirement program called the Voluntary Separation Program 2 ("VSP2"), and all Plaintiffs retired within the three years preceding United's January 21, 2021, offering of its superior United Airlines Frontline Voluntary Separation Leave program ("VSL Program"), but were wrongfully denied the benefits of these programs.

3.      On behalf of themselves and other similarly situated former employees of United, Plaintiffs are seeking payment of benefits pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(b) and injunctive and equitable relief to remedy violations of ERISA Sections 404 and 510, 29 U.S.C. §§ 1105, 1110. In the alternative, the Plaintiffs assert claims under state law for breach of contract and seek specific performance and all other available relief in law and equity.

## **JURISDICTION**

4.      This Court has subject matter jurisdiction over the Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and the specific jurisdictional statute for claims brought pursuant to ERISA, 29 U.S.C. § 1132(e) and (f).

5.      This Court has supplemental jurisdiction over the alternative state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims form part of the same case or controversy. This Court also has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because the matter in controversy exceeds the sum or value of $75,000,

exclusive of interest and costs, and is between citizens of different states.

6.      In the alternative, the Court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332(d) since at least one member of the class is a citizen of a state that is diverse from the state in which Defendants are citizens, there are more than 100 putative class members, and more than $5,000,000 is in controversy, exclusive of interest and costs.

## **VENUE**

7.      Venue is proper in the Northern District of Illinois under 29 U.S.C. §1132(e)(2), because the benefits plans involved in this matter are administered in this judicial district and United Airlines, Inc. is headquartered in this district. Venue is also proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this complaint occurred in this judicial district.

## **NATURE OF THE CASE**

8.      Plaintiffs bring this suit under ERISA for promised benefits under (1) United Airline's Frontline Voluntary Separation Leave Program ("VSL Program") offered to certain employees in January 2021 and (2) United's Voluntary Separation Program 2 ("VSP2") offered to certain employees in June 2020, as well as for injunctive and other equitable relief to enforce rights under and remedy violations of ERISA or alternatively breaches of contract under state law.

9.      The Plaintiffs seek payment of benefits and all other relief and damages due them on behalf of themselves and a class of individuals who are similarly situated.

## THE PARTIES

10.     Plaintiff Micheal (Susie) Hoffman is a former United Airlines, Inc. ("United") flight attendant who retired within 36 months prior to January 1, 2021. She is currently age 64 and is a resident of Castle Rock, Colorado.

11.     Plaintiff Margarett Roumain is a former United flight attendant and inflight supervisor who retired within 36 months prior to January 1, 2021. She is currently age 64 and is a resident of Union, New Jersey.

12.     Plaintiff Gregory Frank is a former United customer service representative who retired within 36 months prior to January 1, 2021. He is currently age 68 and is a resident of Humboldt, Texas.

13.     Plaintiff Victor Yustman is a former United ramp services and cargo employee who retired within 36 months prior to January 1, 2021. He is currently age 66 and is a resident of Moreno Valley, California.

14.     Plaintiff Victoria Fellows is a former United ramp services employee who retired within 36 months prior to January 1, 2021. She is currently age 68 and is a resident of Carson City, California.

15.     Plaintiff Maria Deglauve is a former United employee working in the payroll department who retired within 36 months prior to January 1, 2021. Ms. Deglauve is currently age 56 and is a resident of Santa Clarita, California.

16.     Plaintiff Ron Ozaki is a former United ramp services and cargo employee who retired within 36 months prior to January 1, 2021. Mr. Ozaki is currently age 69 and is a resident of Los Angeles, California.

17.     Plaintiff Bernhard J. Ornellas is a former United ramp services and cargo employee who retired within 36 months prior to January 1, 2021. Mr. Ornellas is currently age 64 and is a resident of Playa del Rey, California.

18.     Plaintiff Ernest Hewson is a former United customer service ramp agent who retired within 36 months prior to January 1, 2021. Mr. Hewson is currently age 69 and is a resident of Los Angeles, California.

19.     Plaintiff Donna Loucks is a former United sales agent/customer service agent who retired within 36 months prior to January 1, 2021. Ms. Loucks is currently age 63 and is a resident of Centennial, Colorado.

20.     Plaintiff Roxann Merlini is a former United flight attendant who retired within 36 months prior to January 1, 2021. Ms. Merlini is currently age 66 and is a resident of San Diego, California.

21.     Plaintiff Jo Gawler is a former United sales agent and ramp service agent who retired within 36 months prior to January 1, 2021. Ms. Gawler is currently age 61 and is a resident of North Potomac, Maryland.

22.     Defendant United Airlines, Inc. ("United") is an Illinois corporation headquartered in Chicago, Illinois that operates throughout the United States. United is the plan sponsor and fiduciary with the power to appoint and duty to monitor other fiduciaries of defendants United Airlines Voluntary Separation Program 2 and the United Airlines Voluntary Separation Leave Program.

23.     Defendant United Airlines, Inc. is the plan sponsor and plan administrator within the meaning of ERISA Section 3(16)(A) and (B), 29 U.S.C. §1002(16)(A) and (B) of the United Airlines 36-Month Supplemental Benefit Plan ("2017 Program"), the United Airlines Retiree

Medical Program, and the United Airlines Consolidated Welfare Benefit Plan and, in those capacities, and others, is an ERISA fiduciary.

24.     United is an employer under 29 U.S.C. § 1002(5).

25.     The 2017 Program is an employee welfare benefit plan within the meaning of ERISA Section 3(1), 29 U.S.C. § 1002(1), in that, as described below, the intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits are clear from the facts and circumstances.

26.     Defendant United Airlines Voluntary Separation Program 2 ("VSP2") is an employee welfare benefit plan within the meaning of ERISA Section 3(1), 29 U.S.C. § 1002(1), that offers severance benefits to employees who voluntarily retire.

27.     Defendant United Airlines Voluntary Separation Leave ("VSL") Program is an employee welfare benefit plan within the meaning of ERISA Section 3(1), 29 U.S.C. § 1002(1), that offers severance benefits to employees who voluntarily retire.

28.     Defendant United Airlines Retiree Medical Program ("Retiree Medical Program") is an employee welfare benefit plan within the meaning of ERISA Section 3(a), 29 U.S.C. § 1002(a).

29.     Defendant United Airlines Consolidated Welfare Benefit Plan ("Welfare Benefit Plan") is an employee welfare benefit plan within the meaning of ERISA Section 3(a), 29 U.S.C. § 1002(a), established effective January 1, 2012, to provide employees and retirees certain benefits including Health Care Expense reimbursement accounts and other post-retiree benefits.

30.     Each of these plans offers intended benefits to intended beneficiaries, possesses a source of financing, and has a procedure to apply for and collect benefits.

## FACTS

### History of United's Early Out Programs

31.     Many airline industry employees work very long careers, and the Plaintiffs were no exception. Throughout their careers, the Plaintiffs and the Class were aware of "early out" program offerings made by United. These early out programs were typically offered when the airline industry was undergoing financial distress. The purpose of an early out program is to induce and provide an incentive to long-term employees to voluntarily separate from their employment earlier than they would otherwise have done in exchange for additional monetary compensation and/or benefits. This allows the airline to reduce its overhead by terminating the employment of, typically, higher paid employees.

32.     For example, in 2008 United offered an early out program for Mechanic and Related Employees (IBT represented employees). The program was offered to employees who were at least 55 years old and had at least 15 years of service. It provided a lump-sum payment of $500 for each year of service up to 25 years of service with a $12,500 limit. It also included travel benefits, as well as life insurance and medical benefits (including a COBRA option).

33.     Similarly, in 2014 United offered an early out program to flight attendants. To be eligible, the employee needed to have a Flight Attendance System Senior bid date of September 1999 or earlier. The program provided a lump-sum payment of $4,000 for each full year of service up to $100,000. It also offered medical and travel pass benefits for retiree eligible employees, as well as COBRA for non-retiree eligible employees.

### The 2017 Program

34.     On August 17, 2017, Oscar Munoz, who was the CEO of United from 2015 to 2020, sent out an announcement to all United employees saying that "[d]uring my visits

throughout the system, a frequent question that arises from our colleagues is: When can we expect to have another early out opportunity so that we can plan for retirement?" In response, Mr. Munoz said that he had looked into this question "with the seriousness and depth that the issue and our people deserve." He continued by saying that "an early out makes sense when a company is getting smaller," but at that time an early out did not make sense because the company was growing.

35.     Nevertheless, Mr. Munoz recognized that some long-term employees were hesitant to retire, sometimes waiting for an offer of an early out program to incentivize a decision to end their long careers. In order to remove this hesitancy and encourage retirement by such workers, Mr. Munoz made a promise to employees designed, in his words, to "give [them] greater confidence when [they] make the decision to retire." Based on that promise, United created and instituted a program providing that if an early out program were to be offered within 36 months after an employee's retirement, the retired employee was allowed to participate in the new program.

36.     Mr. Munoz stated that this 2017 Program was instituted because he "wanted to be upfront and transparent" with the employees about United's future plans so that employees could "make the best plans for [themselves] and [their] family." He added that "[i]f something dramatic happens in the industry and we decide to offer an early out within 36 months after you retire, you would be eligible for the financial benefits of the program even after retiring."

37.     In accordance with CEO Munoz's promise, in August 2017, United set forth the "2017 Program" in writing, guaranteeing retiree participation in any early out program offered within 36 months of retirement.

38.     The 2017 Program was incorporated, either expressly or implicitly, into and became a part of United's retirement and welfare benefit programs for the purpose of allowing retired employees who met the criteria of the 2017 Program to participate in any early out programs offered after the 2017 Program was instituted.

**United's Response to the Pandemic**

39.     In 2020, when the COVID-19 pandemic began to hit the United States and the globe, the airline industry was significantly impacted due to travel restrictions and the decreased demand for travel during early phases of the pandemic. As a result, United, along with many other airlines, found itself in a downward financial trajectory.

40.     In May 2020, in response to a reporter's questions, Kate Gebo, United's Executive Vice President of Human Resources and Labor Relations, said that United planned to cut more than 3,400 management jobs, which represented approximately 30% of United's management and administrative employees. Employees were to be notified in July, with an effective date of October 1, 2020.

41.     Ms. Gebo also stated that United intended to announce a voluntary separation package for domestic management and administrative employees by mid-May 2020. This package allowed certain employees to keep their travel privileges and medical benefits for an extended period along with some continuation of pay.

42.     Ms. Gebo also stated that starting October 1, 2020, white-collar employees who were laid off would not receive any cash severance packages. In the interview she stated that United is "trying to give everyone as much notice as possible that changes are coming, and we're making the voluntary option as attractive as possible."

43. By this time, United was already receiving financial assistance from the CARES Act (Coronavirus Aid, Relief, and Economic Security Act, March 27, 2020). By accepting the financial assistance from the CARES Act, United was prevented from reducing its employment levels more than 10% below its March 24, 2020 level until September 30, 2020. See https://home.treasury.gov/system/files/136/Procedures%20and%20Minimum%20Requirements%20for%20Loans.pdf.

**The VSP2**

44. In the summer of 2020, United offered an early out program called the Voluntary Separation Program 2 ("VSP2") for employees who were active or on leave as of June 1, 2020.

45. The VSP2 offered severance benefits to employees who retired under it.

46. There were two versions of the VSP2 - Option A and Option B. VSP2-A provided enhanced medical benefits, extra travel privileges, job support services, and an additional year of Benefit Service added to the pension plan that some employees participated in from their time with Continental Airlines (called the "CARP") . VSP2-B provided a three-month "leave" period during which the employee would receive 25% of his or her regular pay and enhanced medical benefits.

47. The VSP2 Program provided significantly richer benefits than those received by Class Members who retired after the effective date of the 2017 Program.

48. Although United stated in the FAQ distributed to employees that the VSP2 was not an early out program, it treated the VSP2 as if it were an early out program; nor were there any material differences between the structure of the VSP2 and other programs that had been denominated by United as "early out" programs, despite differences in the benefits offered by the VSP2.

49.     As a result of United's position that the VSP2 was not an early out program, employees who had previously retired were barred from participating in the VSP2. Consequently, employees who had retired between August 17, 2017 and June 1, 2020 were covered by the 2017 Program but were denied participation in the VSP2.

50.     Several of the Plaintiffs, including Ms. Hoffman, Ms. Roumain, Mr. Frank, Ms. Loucks, and Ms. Gawler, retired under the VSP2 in July 2020.

51.     On information and belief, the VSP2 was a company-wide program offered to employees who met specified age and years-of-service requirements.

52.     United pressured employees to take the VSP2 and indicated to them that there would be no better early out programs offered in the future. In an email sent to United employees on May 29, 2020, United stated, "This option [the VSP2] will be our most valuable offer if you're considering leaving United."

53.     United threatened that the employees could be furloughed if they did not take the VSP2 early out program. The VSP2 Program provided superior retirement benefits to those received by class members who retired prior to the VSP2 offering.

54.     In a letter sent to United employees in or around May 2020, United stated, "For those who may be considering [retirement], the new Voluntary Separation Program (VSP2), which was built based on your direct feedback on the first program offering, is the richest voluntary package we foresee being able to offer." The letter continued, "Remember, you must apply in Help Hub before the deadline, to retire as part of VSP2, where you will receive the most valuable separation benefits that we will be able to offer you." The letter concluded, "[w]e know that this is a difficult decision to make, but hope you understand the severity of the situation we find ourselves in. For those who make the sacrifice to take this Voluntary Separation Program

(VSP2), we thank you. While we'll be sad to see you go, your decision helps your fellow United family members, and United will forever be grateful."

## Sunsetting of the 2017 Program and the VSL Program

55.     On October 30, 2020, United announced it would be sunsetting the 2017 Program so as to no longer allow retired employees to participate in early out programs offered within 36 months of retirement. The announcement said that United was sunsetting the 2017 Program due to "uncertainty" in the airline industry, but also because the 2017 Program was "limit[ing] [United's] available options."

56.     The sunsetting of the 2017 Program was effective as of January 1, 2021. However, the sunsetting notice stated that the 2017 "Program will still apply to those who have already retired or who retire before [January 1, 2021]."

57.     On information and belief, United sunsetted the 2017 Program while simultaneously in the process of creating and adopting another early out program called the Voluntary Separation Leave ("VSL") Program, which purposefully deemed retired employees who had retired within 36 months of the program as ineligible.

58.     On January 21, 2021, United announced the VSL Program.

59.     The VSL Program provided significantly richer benefits than the VSP2 had provided.

60.     According to the VSL Program's terms, employees in various job categories had to meet specified age and years-of-service requirements in order to be eligible to participate. On information and belief, the VSL Program was a company-wide program offered to employees who met specified age and years-of-service requirements.

61.     The VSL Program omitted retired employees who were eligible to participate based on the 2017 Program.

62.     The VSL Program contained two options, both of which were superior to the financial incentives contained in the VSP2program or its predecessor, the VSP 1 Program.. Option A offered payment of 33% of the employee's wages up to $20,000 through the end of 2021 (referred to as the "pre-separation period"), a $125,000 contribution to a Retiree Health Account, continued medical coverage through December 31, 2021, and active travel privileges through December 31, 2026.

63.     The VSL Program Option B offered payment of 100% of an eligible employee's base wages up to $112,500 through August 31, 2022 and active travel privileges through December 31, 2026.

64.     At the end of the pre-separation period, employees who were considered eligible for "retiree" status as defined by United (determined by age and years of service) would be eligible for retiree medical and retiree pass travel under certain circumstances. If they were not retiree-eligible for medical, they were entitled to COBRA. If they were not eligible for retiree pass travel, they could be eligible for Retiree Lite Travel passes (depending on their age and years of service).

65.     Employees who chose to participate in the VSL Program would be paid their wages on the regular payroll schedule; however, they did not report to work and at the end of the separation period, were terminated from employment, and were not eligible for rehire or recall by United either during or after the separation period.

66.     The application window for the VSL Program was from January 21, 2021, until 11:59 p.m. CT on February 25, 2021. United did not inform retirees about the VSL Program and how to apply for benefits under the program.

67.     In a question and answer about the VSL Program, United answered the question: "How does this program relate to the Early Out lookback that Oscar announced in 2017?" In response, United wrote: "This program is not an early out, which is a financial incentive program that provides cash upon separation. This Program provides paid leave or medical and pass travel enhancements. These types of benefits are excluded from the 2017 Program, which was updated in 2020."

68.     In fact, however, the VSL Program provided the same kinds of benefits as prior early out programs: a sum of money, medical benefits, and travel benefits and, therefore, falls squarely within the 2017Program, despite United's deliberate attempt to avoid the 2017 Program's obligation to retirees by calling the VSL Program a "leave" program rather than an early out program.

**Plaintiffs' Airline Careers**

69.     Ms. Hoffman worked as an international flight attendant at United. She began her employment as a flight attendant with Continental Airlines in July 1998. When United acquired Continental in 2010 ("Continental acquisition"), Ms. Hoffman became a United employee.    She retired under the VSP2 early out program in July 2020.

70.     Ms. Roumain worked as an international flight attendant and inflight supervisor ("purser") at United. She began as a flight attendant with Continental in December 1996. After the United acquisition, Ms. Roumain became a United Employee. She retired under the VSP2 early out program in July 2020.

14

71.     Mr. Frank worked as a customer service representative at United. He began as a customer service representative for Texas International Airlines in 1977. He continued after that airline was acquired by Continental. After the Continental acquisition, he became an employee of United. He retired under the VSP2 early out program in July 2020.

72.     The remaining Plaintiffs began their careers at Continental in the 1970s and 1980s at Los Angeles International Airport ("LAX"). After the Continental acquisition, Plaintiffs became employees of United.

73.     Mr. Yustman began his employment with Continental Airlines at LAX on April 5, 1975. He worked in ramp services, which continued after he became an employee of United. Mr. Yustman retired from United on February 12, 2019. However, United did not inform him or other retirees about the VSL Program. Instead, through others he knew who were still employed with United, Mr. Yustman became aware of the program on approximately February 24, 2021, two days before the application window for the VSL Program closed. He immediately contacted Arno Hohn, the IAM union representative for LAX employees. Mr. Yustman asked how he could apply for the early out program. Mr. Hohn explained the two options that were available under the VSL Program but stated that he was not sure whether Mr. Yustman was eligible to participate. Mr. Yustman reminded Mr. Hohn about the August 2017 announcement from Mr. Munoz. Mr. Hohn said that he did not recall the 2017 Program, but he informed Mr. Yustman that he would look into it and get back to Mr. Yustman later in the day.

74.     When Mr. Hohn called Mr. Yustman back, he informed Mr. Yustman that the VSL Program was not an early out program. When Mr. Yustman questioned Mr. Hohn about this, Mr. Hohn told Mr. Yustman to forget about the VSL Program and not to waste his time with a lawyer because no lawyer could compete with United's top lawyers.

75.     Not satisfied with this response, Mr. Yustman contacted several people within United, including the United Director of Retirement, the human resources office, the employee services office, and a retirement specialist. No one was willing to help him.

76.     In fact, all of the United personnel with whom Mr. Yustman spoke said they did not recall the announcement from Mr. Munoz about the 2017 Program for anyone who retired within 36 months of an early out offering, despite the very recent, publicly announced cancellation of the 2017 Program only a month earlier, as well as a Q&A that was provided to the VSL participants specifically about the 2017 Program.

77.     Ms. Fellows began her employment with Continental Airlines at LAX on July 16, 1989. She worked in ramp services, which continued after she became an employee of United. In March of 2019, Ms. Fellows injured her knee opening an aircraft door and went on workers' compensation. She eventually had a total knee replacement. Due to the surgery and subsequent complications from the surgery, she remained off work for many months. In October 2020, her doctor released her to return to work but with restrictions and limitations. Because of her restrictions, United told her they did not have a position to which she could return and told her she either needed to resign or retire. Around December 8th or 9th of 2020, Ms. Fellows talked to a human resources representative from United and was told she needed to give a date of resignation or retirement. Having worked for over 30 years and being 67 years old, Ms. Fellows decided to retire. Her official retirement date was set for December 10, 2020. Ms. Fellows was not informed by United that an early out package was going to be announced on January 21, 2021, nor did she receive any communication directly about the package when it was announced on January 21, 2021. Ms. Fellows certainly would have postponed her retirement date if she had been given the opportunity and informed that by doing so, she would qualify for additional

16

valuable benefits. She learned there was a package because she was still friends with many United employees. She tried to contact United to find out more about the early out and whether she qualified, but no one would answer or return her calls.

78.     Ms. Deglauve began her employment with Continental Airlines at LAX on April 7, 1986. In January 2020, at the age of 54 and just shy of 34 years of service, she decided to retire. Ms. Deglauve never received any direct communication from United about the early out program announced on January 21, 2021.

79.     Mr. Ozaki began his employment with Continental Airlines at LAX on December 13, 1978. In 2019, although hoping for early out offering, Mr. Ozaki decided it was time to retire. He retired effective June 2, 2019. Mr. Ozaki never received any direct communication from United about the early out program announced on January 21, 2021.

80.     Mr. Ornellas began his employment with Continental Airlines at LAX on December 28, 1977, at the age of 19. After COVID-19 began to affect United employees, Mr. Ornellas decided to use his many hours of unused sick time and stay home. At that point, he had accumulated approximately 1,500 hours of sick time and he took seven months off work and returned in October 2020. He was planning on working through the end of December 2021, but after being back for a couple of months during a peak of COVID-19 cases, he decided he was ready to retire after 43 years of employment. Around December 10, 2020, Mr. Ornellas called United and spoke to Teri Gallardo, the LAX Human Resources Operations Supervisor, to inform her of his intent to retire. Ms. Gallardo told Mr. Ornellas that he would receive more from the Continental Airlines Retirement Plan if he retired in December than he would if he retired in January because the interest rates used to adjust the lump sum would be changing effective

January 2021. Based on this conversation, Mr. Ornellas decided he would retire in December 2020.

81.     United set Mr. Ornellas' official retirement date as effective December 28, 2020, although he, in fact, continued to work with United's human resources for the first two weeks of January 2021 to finalize the required paperwork. Indeed, from December 10, 2020, through early January 2021, Mr. Ornellas had approximately 15 calls with human resources personnel in order to complete required forms and to have his questions answered. On or about January 7, 2021, Mr. Ornellas received an official letter confirming his termination from active employment. The letter was dated January 4, 2021. Nowhere in this letter and at no time during any of his conversations between December 10, 2020 and January 7, 2021 did United inform him of the imminent early out program that United was about to offer to employees, and he never directly received any communication from United about the program. Mr. Ornellas was shocked and outraged when he learned from Mr. Yustman about the early out that was being offered to others so close after his date of retirement. He certainly would have waited a few weeks to retire in order to qualify for these valuable benefits if he had been informed that this was necessary. He contacted human resources and was told there was nothing they could do because he was retired and no longer an active employee.

82.     Mr. Hewson was employed by Continental Airlines at LAX starting in November 1988. After more than 30 years of service, he decided to retire effective April 1, 2019, at the age of 66. He never received any direct communication from United about the early out program announced on January 21, 2021.

83.     Donna Loucks was employed by Continental Airlines as an airport sales agent/customer service agent beginning in June 1986 and became a United employee following

the merger. She retired under the VSP2 on July 1, 2020. However, when she learned about the VSL, she contacted United and requested participation based on the 2017 Program. However, she was told she was not eligible since United was asserting the VSL was not an early out program.

84.    Roxann Merlini was employed by Continental as a flight attendant beginning in October 1996 and became a United employee following the merger. She retired under the VSP1 on April 3, 2020 and was never notified about the VSL program.

85.    Jo Ann Gawler began working for United in October 1987 as a reservation sales representative. She later became a ramp service agent and retired from that position on July 29, 2020 under the VSP2. She subsequently learned about the VSL program on social media but was never offered participation and when she made inquiry through her union, she did not receive a response regarding her eligibility to participate in the VSL.

## Exhaustion and Futility of the Application Process

86.    By failing to provide Plaintiffs and the Class members with the notices about the VSL Program and access to apply for the benefits thereunder, United prevented Plaintiffs and the Class members from applying for the VSL Program. In fact, the application process was only available through an online platform for employees, which most Plaintiffs and Class members, as retirees, no longer could access.

87.    For instance, Mr. Yustman has no access to the online platform, and as detailed above, made inquiries in writing and telephonically in an attempt to apply for benefits immediately after becoming aware of the VSL Program but was not given direction about how to do so.

88.     Nevertheless, despite the lack of a readily available process for doing so, Mr. Yustman made a written claim for benefits through a letter dated September 15, 2021, from counsel for Mr. Yustman to the administrator of the VSL Program. No response was received.

89.     Ms. Hoffman, however, as a participant in VSP2, was able to apply for VSL benefits through United's internal communications service, HelpHub on February 15, 2021. Her application was denied.

90.     Ms. Hoffman called United's Human Resources service on February 15, 2021 to ask why she could not receive benefits of the VSL under the 2017Program. United gave the following response: "this program [the VSL] is not an early out, which is a financial incentive program that provides cash upon separation. This program provides paid leave or medical and pass travel enhancements. These types of benefits are excluded from the 2017 policy, which was updated in 2020. For details, please refer to Sunsetting our early out policy."

91.     Ms. Hoffman received a follow-up email from United's HelpHub on February 15, 2021 stating that it was providing a "screenshot found within our VSL program FAQ in HelpHub that states why the VSL program is not considered an early out program." The paragraph indicated as being the screenshot stated: "[t]his program is not an early out, which is a financial incentive program that provides cash upon separation. This program pays paid leave or medical and pass travel enhancements. These types of benefits are excluded from the 2017 policy, which was updated in 2020. For details, please refer to Sunsetting our early out policy."

92.     However, as detailed above, the VSL provided cash upon separation.

93.     On April 2, 2021, Ms. Hoffman submitted a written appeal to United. She also requested copies of all pertinent policies.

94.     United responded in writing on April 20, 2021 and April 22, 2021, continuing to assert the position that Ms. Hoffman was not eligible for the enhanced VSL benefits. It also asserted that the plans in question were not covered by ERISA.

95.     On June 16, 2021, Ms. Hoffman submitted a second written appeal to United.

96.     On July 29, 2021, United denied Ms. Hoffman's appeal, continuing to assert that she was not entitled to enhanced VSL benefits.

97.     Ms. Hoffman thus exhausted all administrative requirements.

98.     In light of United's responses to Ms. Hoffman's application for VSL benefits, as well as its lack of notice and a procedure for most retirees to apply for benefits, as evidenced by Mr. Yustman's efforts, all other Plaintiffs should be deemed to have exhausted all administrative requirements or excused from any such requirements on the basis of futility.

### Plaintiffs' Entitlement to VSP2 and/or VSL Benefits

99.     On information and belief, a large number of United employees retired during the time period covering August 17, 2017 and June 1, 2020. Those retirees were entitled to the financial benefits of the VSP2 under the 2017 Program but were denied participation.

100.     The named Plaintiffs all retired within 36 months of the VSL. As such, under the 2017 Program and the Message from Oscar, they are all entitled to the financial benefits of the VSL.

101.     The VPS2 and the VSL offers the same kinds of benefits as prior early out programs: extra pay, enhanced medical benefits and enhanced travel benefits. There is no functional difference between the VSP2 and VSL and prior early out programs offered by United.

21

102.    United contends that the VSP2 and VSL are not "early out programs" because they involve paid "leaves of absence." But a "leave of absence" allows employees to return to work when the leave is over and the VSP2 and VSL did no such thing. Instead, like other United early out programs, they offered cash benefits to employees who agreed to terminate their employment.

103.    United's characterization of the VSP2 and VSL as a "leave of absence" rather than an "early out program" is therefore form without substance and nothing more than an attempt to avoid CEO Munoz's promise later memorialized in the 2017 Program of encouraging United employees to retire early with the security of the benefits of a later announced program, and thereby avoid paying large numbers of employees the benefits it promised in its 2017 Program.

104.    In fact, United at times referred to the VSP2 as an "early out" program.

105.    With respect to the plaintiffs who retired under the VSP2, United also contends that even if the VSL is an early out program, the 2017 Program does not apply to employees who retired under *other* early out programs, only to employees who retired under normal circumstances.

106.    The 2017 Program contains no such language or limitation. It states that it applies to any "employee who has retired in good standing, within the previous 36 months of the closing date of an Early Out election window, meets all Early Out eligibility requirements as of their retirement date, and whose last work assignment immediately prior to retirement was from the workgroup offering the Early Out."

107.    All Plaintiffs meet all these requirements.

**Application of ERISA to the 2017 Program, the VSP2 and the VSL**

108.    ERISA governs employee benefit plans that are established or maintained by any employer engaged in commerce and includes both employee welfare benefit plans and employee pension benefit plans. 29 U.S.C. §§ 1002 and 1003(a).

109.    29 U.S.C. § 1002(3) provides that an employee welfare benefit plan is "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer to provide, in part, medical, disability, or unemployment benefits."

110.    29 C.F.R. § 2510.3–1(a)(3) provides that "include[d] within the definition of 'welfare plan' [are] those plans which provide holiday and severance benefits, and benefits which are similar (for example, benefits which are in substance severance benefits, although not so characterized)."

111.    The VSP2 and VSL Programs are employee benefit plans that were established and are maintained by United that provide salary continuation and ancillary benefits that constitute or are similar to severance benefits. They are, therefore, welfare plans or programs governed by ERISA.

112.    The 2017 Program is likewise an ERISA welfare benefit plan governed by ERISA.

## <u>CLASS ACTION ALLEGATIONS</u>

113.    **Class Definition**. Plaintiffs bring this action as a class action pursuant to Rules 23(a), (b)(1) and (b)(2) of the Federal Rules of Civil Procedure on behalf of themselves and the following class of persons similarly situated (the "Class"):

All employees of United who retired within the 36 months preceding January 1, 2021 who were barred from participating in the VSP2 and/or the VSL, and who would otherwise have been eligible had they not previously retired.

114.     **Numerosity**. Upon information and belief, the Class is so numerous that joinder of all persons in the class is impracticable. Numerosity of the class will be ascertained and confirmed by discovery. The number and identity of the class members are determinable from the Defendants' records.

115.     **Commonality.** There are questions of law or fact common to all members of the Class that concern Defendants' actions, including without limitation:

a.   Whether the VSP2 and VSL Programs are early out programs to which the 2017 Program applies**;**

b.   Whether the 2017 Program is an ERISA plan;

c.   Whether Defendants unlawfully excluded Plaintiffs and the Class of retirees from eligibility to participate in the VSP2 and VSL Programs;

d.   Whether Defendants owed a fiduciary duty to Plaintiffs and the Class with regard to their right to participate in the VSP2 and VSL Programs;

e.   Whether Defendants unlawfully prevented employees who retired between August 17, 2017 and December 31, 2017 from being eligible to participate in and applying for benefits under the VSP2 Program;

f.   Whether Defendants unlawfully prevented employees who retired within 36 months prior to January 1, 2021, from being eligible to participate in and applying for benefits under the VSL Program; and

24

g.   Whether Defendants breached their fiduciary duties by preventing Plaintiffs and the Class from participating in the VSP2 and VSL Programs.

116.   **Typicality**. Plaintiffs are members of the Class as defined above. They have all been similarly harmed by the Defendants' actions in violating ERISA. They assert the same claims and legal theories under the same provisions of ERISA, and Regulations promulgated thereunder, that all Class members might assert.

117.   **Adequacy**. Plaintiffs will fairly and adequately protect the interests of the absent members of the Class. Because their claims are typical of those of absent members of the Class, Plaintiffs have every incentive to vigorously pursue those claims on behalf of absent Class members. Their interests coincide with, and are not antagonistic to, those of the Class. Moreover, Plaintiffs are represented by counsel experienced in ERISA and complex class action litigation.

118.   **Rule 23(b)(1) Requirements**. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants, and a risk of adjudications which as a practical matter would be dispositive of the interests of other members of the Class who are not parties.

119.   **Rule 23(b)(2) Requirements**. Defendants have acted and/or refused to act and are likely to act and/or refuse to act on grounds generally applicable to the Class, thereby making appropriate final injunctive and other relief with respect to the Class as a whole.

## FIRST CLAIM FOR RELIEF

### (Against All Defendants)

### Claim for Benefits under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)

120.    Plaintiffs incorporate all of the foregoing paragraphs as though fully set forth herein.

121.    ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), empowers a plan participant to bring suit to recover benefits due him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

122.    The VSP2 and VSL Programs are ERISA plans.

123.    The VSP2 and VSL Programs are early out programs as they meet all of the criteria and are substantially similar to all other prior early out programs offered by United Airlines.

124.    Plaintiffs and the Class all retired within 36 months of the offering of the VSP2 or VSL Programs and are therefore eligible to participate in the VSP2 or VSL Programs and the ancillary benefits thereto offered through United Airlines Consolidated Welfare Benefit Plan and Retiree Medical Program.

125.    Plaintiffs and the Class were not provided any communication about the VSP2 or VSL Programs or the ability to apply within the application window. Mr. Yustman was specifically discouraged and prevented from applying for the VSL Program. Ms. Hoffman's application to the VSL Program was denied.

126.    Despite United's attempt to prevent Mr. Yustman from applying for the VSL Program, Mr. Yustman, through his counsel, filed a claim for benefits on October 5, 2021.

Defendants have never responded to the claim. Ms. Hoffman went through the entire appeal process and her claim was denied. Therefore, the Plaintiffs and the Class are deemed to have exhausted any administrative procedure applicable to the VSL Program.

127.    In addition, Plaintiffs and the Class are deemed to have exhausted any administrative procedures applicable to the VSL because they were not provided any information on how to apply, how to file a claim or any appeal rights they would have under ERISA and were not given access to the online platform through which employees were instructed to apply.

128.    Such application would also have been futile given that Defendants designed the VSP2 and VSL Programs in an attempt to evade the earlier promises made to recent retirees.

129.    Therefore, Plaintiffs have fulfilled all obligations required of them to file suit in court.

130.    Plaintiffs and the Class seek a declaration that they are retired employees who were eligible to participate in the VSP2 and VSL Programs offered to employees on January 21, 2021 and entitled to benefits under the VSP2 or VSL Programs.

131.    Plaintiffs and the Class also seek benefits due them under the VSP2 and VSL Programs.

**SECOND CLAIM FOR RELIEF**

**(Against All Defendants)**

**In the Alternative to the First Claim for Relief**

**Claim for Benefits under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)**

131.    Plaintiffs incorporate all of the foregoing paragraphs as though fully set forth herein.

132.     ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), empowers a plan participant to bring suit to recover benefits due him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

133.     The 2017 Program is an employee welfare benefit plan within the meaning of ERISA Section 3(1), 29 U.S.C. § 1002(1), in that the intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits are clear from the facts and circumstances.

134.     The VSP2 and VSL Programs are early out programs, and Plaintiffs and the Class were entitled to the monetary incentives and additional benefits offered under these programs pursuant to the 2017 Program (ERISA Plan).

135.     Plaintiffs and the Class meet all of the criteria under the 2017 Program in that they all retired within 36 months of the offering of the VSP2 or VSL Programs and are therefore eligible to participate in the VSP2 or VSL Programs and the ancillary benefits thereto offered through United Airlines Consolidated Welfare Benefit Plan and Retiree Medical Program.

136.     Plaintiffs and the Class were not provided any communication about the VSP2 or VSL Programs or the ability to apply within the application window. Mr. Yustman was specifically discouraged and prevented from applying for the VSL Program. Ms. Hoffman's application to the VSL Program was denied.

137.     Despite United's attempt to prevent Mr. Yustman from applying for the VSL Program, Mr. Yustman, through his counsel, filed a claim for benefits on October 5, 2021. Defendants have never responded to the claim. Ms. Hoffman went through the entire appeal

process and her claim was denied. Therefore, the Plaintiffs and the Class are deemed to have

exhausted any administrative procedure applicable to the VSL Program.

138.    In addition, Plaintiffs and the Class are deemed to have exhausted any

administrative procedures applicable to the VSL because they were not provided any information

on how to apply, how to file a claim or any appeal rights they would have under ERISA and were

not given access to the online platform through which employees were instructed to apply.

139.    Such application would also have been futile given that Defendants designed the

VSP2 and VSL Programs in an attempt to evade the earlier promises made under the 2017

Program.

140.    Therefore, Plaintiffs have fulfilled all obligations required of them to file suit in

court.

141.    Plaintiffs and the Class seek a declaration that they are retired employees who

were eligible under the 2017 Program, as an ERISA Plan, and were entitled to the monetary

incentives offered under the VSP2 and VSL Programs.

142.    Plaintiffs and the Class also seek benefits due them under the 2017 Program,

specifically the monetary incentives and other benefits offered under the VSP2 and VSL

Programs.

## THIRD CLAIM FOR RELIEF

### (Against Defendant United)

### Claim Under ERISA Section 502(a)(3), 29 U.S.C. 1132(a)(3), for Violation of ERISA Section 404(a), 29 U.S.C. § 1104(a)

143.    Plaintiffs incorporate all of the foregoing paragraphs as though fully set forth

herein.

144.     United is the Employer under 29 U.S.C. § 1002(5) and the Plan sponsor pursuant to 29 U.S.C. § 1002(16).

145.     On information and belief, United acted as a fiduciary within the meaning of 29 U.S.C. § 1002(21) with respect to the early out programs, including the VSP2 and VSL Programs, including by appointing the other fiduciaries, which appointment carried with it the duty to monitor its appointee(s). United was also the plan administrator of the 2017 Program and, as such, United is a fiduciary with respect to the 2017 Program.

146.     ERISA Section 404(a), 29 U.S.C. § 1104(a), requires, among other things, that a fiduciary discharge its duties with respect to a plan solely in the interest of the plan participants and beneficiaries, for the exclusive purpose of providing benefits to participants and beneficiaries and under a prudent person standard of care.

147.     United breached its fiduciary duties by reneging on its promise to employees who retired in the 36 months preceding January 21, 2021, through a scheme to prevent these retirees from participating in the VSP2 and VSL Programs by, among other things, failing to inform them about the VSP2 and VSL Programs, and failing to give them an opportunity to apply for benefits under the VSP2 and VSL Programs. United further breached its fiduciary duties by actively misinforming employees in a Q&A that the VSP2 and VSL were not early out programs when, in actuality, they were not different in any material way from prior early out programs offered by United.

148.     Plaintiffs and the Class have been harmed by Defendant United's breach of fiduciary duties.

## FOURTH CLAIM FOR RELIEF

**(Against Defendant United)**

**Claim Pursuant to ERISA Section 502(a)(3), 29 U.S.C. 1132(a)(3), for Violation of ERISA Section 510, 29 U.S.C. § 1140**

149.    Plaintiffs incorporate all of the foregoing paragraphs as though fully set forth herein.

150.    ERISA Section 510, 29 U.S.C. § 1140, as relevant here, makes it "unlawful for any person to…discriminate against a participant…for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."

151.    ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a civil action by a plan participant to obtain appropriate equitable relief to redress a violation of ERISA.

152.    By intentionally creating and implementing the VSP2 and VSL Programs that specifically carved out retirees who were eligible pursuant to the 2017 Program, and by failing to give retirees who terminated employment within 36 months prior to the VSP2 and VSL notice of the programs and preventing them from applying for benefits under the VSP2 and VSL, United violated ERISA Section 510 by interfering with their attainment of the rights and benefits under the VSP2 and VSL Programs.

153.    Plaintiffs have suffered harm as a result of United's improper actions.

**FIFTH CLAIM FOR RELIEF**

**(Against Defendant United)**

**In the Alternative to the First, Second, Third, and Fourth Claims for Relief**

**Claim For Breach of Contract**

154.    Plaintiffs incorporate all of the foregoing paragraphs as though fully set forth herein.

155.    The 2017 promise made by Oscar Munoz and the written 2017 Program instituted by United constitutes a contract between United and its employees.

156.    Once they retired, the contract became fully enforceable as a unilateral contract.

157.    All Plaintiffs worked for United while the promise was in effect and retired prior to the sunsetting, of the 2017 Program.

158.    United breached the contract by refusing to allow Plaintiffs, and the putative class, to participate in the VSP2 and VSL Programs, which are early out programs established for the purpose of inducing employees to voluntarily separate from employment earlier than they would have.

159.    Plaintiffs have been damaged as a result of United's breach of the contract in an amount to be proven at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray this Court enter judgment as follows:

As to the First Claim for Relief

A.    Certify the Class under Federal Rule of Civil Procedure 23, appoint Plaintiffs as Class Representatives and appoint their attorneys as Class Counsel to represent the members of the Class.

B.    Declare and clarify that Plaintiffs and members of the Class are entitled to participate in the VSP2 and/or VSL Programs.

C.    Order that benefits be awarded to Plaintiffs and Class members.

D.    Award Plaintiffs attorneys' fees and costs pursuant to ERISA Section 502(g), 29 U.S.C. § 1132(g).

E.    Award such other and further relief as the Court deems equitable and just.

As to the Second Claim for Relief

F.    Certify the Class under Federal Rule of Civil Procedure 23, appoint Plaintiffs as Class Representatives and appoint their attorneys as Class Counsel to represent the members of the Class.

G.    Declare the 2017 Program is an ERISA Plan.

H.    Declare and clarify that Plaintiffs and members of the Class are entitled to monetary incentive under the VSP2 and/or VSL Programs as participants in the 2017 Program.

I.    Order that benefits be awarded to Plaintiffs and Class members.

J.    Award Plaintiffs attorneys' fees and costs pursuant to ERISA Section 502(g), 29 U.S.C. § 1132(g).

K.    Award such other and further relief as the Court deems equitable and just.

As to the Third Claim for Relief

A.    Certify the Class under Federal Rule of Civil Procedure 23, appoint Plaintiffs as Class Representatives and appoint their attorneys as Class Counsel to represent the members of the Class.

B. Declare that Defendant United has breached its fiduciary duties to Plaintiffs and the Class members.

C. Surcharge Defendants in the amount necessary to place Plaintiffs and the Class in the position they would have been in but for the Defendants' fiduciary breaches.

D. Reform the VSP2 and VSL Programs in accordance with the 2017 Program.

E. Equitably estop Defendants from denying that Plaintiffs and the Class are entitled to benefits under the VSP2 and VSL Programs and from preventing Plaintiffs and Class members from applying for and obtaining benefits under the Plan.

F. Award Plaintiffs attorneys' fees and costs pursuant to ERISA Section 502(g), 29 U.S.C. § 1132(g).

G. Award such other and further relief as the Court deems equitable and just.

As to the Fourth Claim for Relief

A. Certify the Class under Federal Rule of Civil Procedure 23, appoint Plaintiffs as Class Representatives and appoint their attorneys as Class Counsel to represent the members of the Class.

B. Declare that Defendant United has violated ERISA Section 510.

C. Surcharge Defendants in the amount necessary to place Plaintiffs and the Class in the position they would have been in but for the Defendant's violation of ERISA Section 510.

D. Reform the VSP2 and VSL Programs in accordance with the 2017 Program.

E. Equitably estop Defendants from preventing Plaintiffs and the Class from applying for and obtaining benefits under the VSP2 and VSL.

F.      Award Plaintiffs attorneys' fees and costs pursuant to ERISA Section 502(g), 29 U.S.C. § 1132(g).

G.      Award such other and further relief as the Court deems equitable and just.

As to the Fifth Claim for Relief

A.      Certify the Class under Federal Rule of Civil Procedure 23, appoint Plaintiffs as Class Representatives and appoint their attorneys as Class Counsel to represent the members of the Class.

B.      Compel specific performance by United of its duty under the 2017 Program to offer Plaintiffs and all class members to apply for and receive benefits under the VSP2 and VSL.

C.      Award all damages and relief available in law and equity according to proof at trial including, without limitation, compensatory damages, and specific performance.

D.      Award pre- and post-judgment interest on damages.

E.      Award such other relief as the Court deems equitable and just.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial as to their claim brought under state law.

Dated: May 10, 2022                                    Respectfully submitted,


/s/ Jamie S. Franklin                                  /s/ Elizabeth Hopkins

Jamie S. Franklin,                                     Elizabeth Hopkins
ARDC No. 6242916                                       Scott Lempert
The Civil Litigation Clinic at                         Susan L. Meter
Chicago-Kent School of Law                             Kantor & Kantor, LLP
565 West Adams Street, Suite 600                       19839 Nordhoff Street
Chicago, IL 60661                                      Northridge, CA 91324
312-906-5048 (Phone)                                   818-886-2525 (Phone)

312-906-5299 (Fax)
jfranklin5@kentlaw.iit.edu

/s/ Jeffrey Lewis

Jeffrey Lewis, SB No. 66587
Keller Rohrback L.L.P.
180 Grand Avenue, Suite 1380
Oakland, CA 94612
(510) 463-3900 (Phone)
(510) 463-3901 (Fax)
jlewis@kellerrohrback.com

/s/ Mark D. DeBofsky

Mark D. DeBofsky
DeBofsky Sherman Casciari
Reynolds P.C.
150 N. Wacker Dr., Suite 1925
Chicago, IL 60606
(312) 561-4040 (Phone)
(312) 929-0309 (Fax)
mdebofsky@debofsky.com

818-350-6272 (Fax)
ehopkins@kantorlaw.net
slempert@kantorlaw.net
smeter@kantorlaw.net

/s/ David S. Preminger

David S. Preminger
Keller Rohrback L.L.P.
1140 Avenue of the Americas,
Ninth Floor
New York, NY 10036
(646) 380-6690 (Phone)
(646) 380-6692 (Fax)
dpreminger@kellerrohrback.com

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned attorney hereby certifies that she caused a true and correct copy of the foregoing **Second Amended Class Action Complaint** to be filed with the Clerk of the Court using the CM/ECF Filing System and electronically serving the parties listed below on this 10th day of May 2022:

*/s/ Jamie S. Franklin*
Jamie Franklin

<u>Service List:</u>

M. Tristan Morales
Brian D. Boyle
Shannon M. Barrett
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC 20006
bboyle@omm.com
sbarrett@omm.com
tmorales@omm.com

Larry S. Kaplan
Marnie A. Holz
KMA ZUCKERT LLC
200 W. Madison Street, 16th Fl.
Chicago, IL 60606
lkaplan@kmazuckert.com
mholz@kmazuckert.com